**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **THOMAS PRITCHARD,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**STATE OF DELAWARE DEPARTMENT OF CORRECTIONS, an agency of the State of Delaware, CAROL EVANS, individually and in her official capacity, WAYNE WILSON, individually only, ALAN GRINDSTEAD, individually and in his official capacity only, ROBERT COUPE, in his official capacity only, and PERRY PHELPS, in his official capacity only,**<br><br>**Defendants.** | : | **C.A. No.**<br><br>**Trial By Jury Demanded** |

**COMPLAINT**

## I. INTRODUCTION

1. This is a case of race, nationality, and retaliatory discrimination leading to a demotion and failures to promote the plaintiff. Plaintiff proceeds under pretext theory under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq, under 42 U.S.C. §§ 1983 and 1981, and in violation of the Fourteenth Amendment of the U.S. Constitution. This case also concerns retaliation for petitioning the government for a redress of grievances in violation of the Petitions Clause of the First Amendment of the U.S. Constitution.

## II. JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq ["Title VII"]; 42 U.S.C. § 1981(a), the Civil Rights Act

of 1991, Pub.L. No 102-166, 105 Stat. 1071; 28 U.S.C. § 1331, 1332, 1343, 2201 and 2202. The cause of action rises under Title VII, 42 U.S.C. § 1983/§1981 and the First Amendment of the U.S. Constitution. The claims arose in this judicial district.

3. All conditions precedent to Title VII jurisdiction have been complied with or have occurred. On or about February 24, 2015, Plaintiff Thomas Pritchard, within 300 days of the commission of any unlawful employment practice, filed a charge of employment discrimination in demotion and promotion and terms and conditions of employment, based upon race, nationality, and retaliatory discrimination, with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission. ('EEOC").

4. On September 28, 2017 a Right to Sue letter was issued by the EEOC. This Complaint has been filed within 90 days of Plaintiff' Pritchard's receipt of the Right to Sue Letter.

5. The State of Delaware Department of Corrections ("DOC") is a governmental entity with more than 500 employees.

6. This Complaint has been filed within two or four years of any unlawful activity by Defendants.

## III. THE PARTIES

7. Plaintiff Thomas Pritchard ("Plaintiff" or "Pritchard") is a citizen of the United States and a resident of Smyrna, Delaware . He is a 12 year employee of the State of Delaware Department of Correction ("the State" or "DOC"). He was born in Liberia, Africa, and his skin color is black.

8. Defendant DOC is an agency of the State of Delaware. For §1983 purposes, it is

only joined in this action for purposes of collecting attorneys' fees and costs. It also is a covered employer under Title VII.

9. Defendant Alan Grindstead ("Grindstead") at all times relevant hereto has been the Chief of the State Bureau of Prisons, a policy making position. He is a resident of Delaware. He is sued in his individual and official capacities.

10. Defendant Perry Phelps ("Phelps"), a Delaware resident, is presently the Commissioner for the DOC. He is sued in his official capacity only.

11. Defendant Robert Koupe ("Koupe"), a Delaware resident, was the Commissioner of the DOC. He is sued individually and in his official capacity.

12. Defendant Carol Evans ("Evans"), a Wilmington, Delaware resident, is and has been the Warden overseeing at a policy making level the Level 4 facilities commonly referred to as the Plumber Center, the Webb Center, and the Women's Treatment Center. As such, she is and has been Plaintiff Pritchard's boss' boss. She is sued in both her individual and official capacity.

13. Defendant Wayne Wilson ("Wilson"), a Wilmington, Delaware resident, is and has been a Deputy Warden. As such, he is and has been Plaintiff Pritchard's boss. He is sued in his individual capacity.

## IV. <u>FACTS GIVING RISE TO THE ACTION</u>

14. All of the discriminatory actions taken against Pritchard have taken place in the State of Delaware.

### <u>Plaintiff Pritchard's Prior Work History</u>

15. Pritchard is presently employed as a Sergeant for the DOC assigned to Level IV,

which deals with substance abuse counseling facilities.

16. Pritchard is a black male born in Liberia who at all times was diligent, loyal and able employee. Prior to working for DOC, he was a member of the U.S. Army for 20 years, retiring with an honorable discharge.

17. Throughout his employment with DOC, Pritchard received performance evaluations where he either met or exceeded expectations.

**Discriminatory 10 Day Suspension Allegedly Due to Violations of the PREA**

18. In February of 2015, then Lieutenant Pritchard was assigned to a Level IV substance abuse counseling center with approximately 20 resident offenders. These offenders sleep barracks style in a common bedroom.

19. On or about February 1, 2015, one of the offenders touched another offender's buttocks. Pritchard investigated by having the two offenders and any witnesses interviewed individually, ultimately preparing a report and concluding that it occurred as horseplay between the offenders.

20. On or about February 1, 2015, (the same day as the incident) the DOC came out with new policies regarding the Prison Rape Elimination Act ("PREA"). Supervisors were informed that they should review the new policy within 10 days.

21, On or about February , 2015, Pritchard/s boss' boss, Warden Carol Evans, wrote him up for a 10 day suspension for violating DOC's PREA policy. This suspension was unfair and excessive. It violated the DOC's Progressive Discipline Policy.

22. Pritchard timely grieved this 10 day suspension when the union filed a grievance for him, thus petitioning the government on his behalf.

23. On or about February 24, 2015, Pritchard filed with the Equal Employment Opportunity Commission race and nationality charges of discrimination against the DOC, thus simulataneously engaging in a protected activity under Title VII of the Civil Rights Act of 1964 as amended in 1991 and petitioning the government on his own behalf.

24. On or about April 24, 2015, Bureau Chief Alan Grindstead issued a ruling agreeing with Warden Evans' recommendation of a 10 day suspension.

25. The Defendants' alleged crux of the issue with Pritchard was that he allowed the two offenders to remain at the facility and sleep in the same room that night. However, the room they slept in included approximately 20 other offenders as well, and this dorm room was checked every half hour by DOC personnel.

26. Bureau Chief Grindstead, Warden Evans, and Deputy Warden Wilson were upset with Pritchard for filing the grievance and for filing the EEOC charges.

27. Pritchard emailed then Commissioner Robert Coupe concerning how he was being treated.

28. The union refused to take Pritchard's grievance to arbitration, citing the expense of doing so.

29. Pritchard could not pay for the arbitration himself, yet he understandably maintained his innocense in the matter, even after DOC tried to make him admit guilt by offering a one day suspension instead of ten days.

30. A 10 day suspension notice was placed in Pritchard's personnel file without Pritchard's knowledge.

**Discriminatory and Retaliatory Demotion to Sergeant**

31. On of about March of 2016, Pritchard was acting supervisor when it became known that one of the offenders had gone to work earlier in the day when in fact he had violated parole and therefore had to be sent from the facility to another facility.

32. Mistakenly allowing an offender to go to work when the offender should not occasionally does happen.

33. Pritchard spoke with his officers on duty and sent two officers to the offender's workplace to get him. They did so without incident. Although they took pepper spray with them, they did not take their firearms with them.

34. For a period of time, the number of officers which Pritchard was supervising on site was three instead of five. At the same time, there were auxiliary road crew officers on site and, unbeknownst to Pritchard, Warden Evans was on site.

35. After the fact, Warden Evans became aware that the two officers had been sent to pick up the offender. Pritchard was brought before Warden Evans, who summarily had him embarrassingly escorted off the grounds, without asking him any questions about what happened.

36. At the time, there was no policy requiring officers to take their firearms weapons with them when going offsite to bring back an offender, but in the year 2017 a new policy was enacted requiring officers to bring their firearms weapons under such circumstances.

37. Other DOC officers had been sent out without weapons from the facility to bring an offender back to the facility.

38. For example, Captain Farmer authorized Lieutenant Knight to do so.

39. Similarly, Staff Lieutenant Wayne Lee authorized Corporal Dimh to do so.

40. Nonetheless, Warden Evans issued an Order demoting Pritchard to Sergeant.

41. The president of the union, Karl Hazzard, refused to grieve Pritchard's demotion because Pritchard had "pissed a lot of people off."

42. Pritchard did not have money for an arbitration and based upon his prior experience with the grievance process had no expectation that the grievance process would produce a positive result.

**Improper Retaliatory Mandatory Referral to Counseling**

43. In retaliation for filing the grievance and/or the EEOC charge, and/or for complaining about harassment and embarrassment, Deputy Warden Wilson required Plaintiff Pritchard to submit a return to work form before returning to work. As a result, Plaintiff was unnecessarily out of work from October 3, 2016 through October 11, 2016.

44. On or about October 17, 2016, Warden Evans further retaliated against Plaintiff Pritchard when she removed from the workplace pending a Fitness for Duty examination.

45. After he reported for and passed the Fitness for Duty examination, he received a Memorandum Order dated November 4, 2016, from Deputy Warden Wilson requiring him to make a mandatory appointment through HMS (EAP) to begin outpatient therapy. This written Order specifically stated that the Fitness for Duty examination found that Pritchard could go to therapy to "improve coping skills and to learn stress management."

46. This violates the DOC's Fitness for Duty Examinations policy, which specifically states that "The report and information received shall be limited to a conclusion about whether the employee is fit for duty."

47. During a therapy session, Therapist Nancy Ball told Pritchard that the DOC

ultimately was going to fire him and that they obviously were trying to force Pritchard to quit working for the DOC.

48. DOC further violated its Fitness for Duty policy by not having someone from Human Resources meet with Pritchard about the matter.

**Retaliatory Failures to Promote**

49. Altogether, since September of 2013, Plaintiff Pritchard has received 12 Notices of Failure to Promote after applying for promotions.

50. From May of 2015 to the present, Plaintiff Pritchard has received eight Notices of Failure to Promote.

51. According to Merit Rule 13.0100 concerning promotion, "Whenever a position is to be filled by promotion, the candidate shall meet the minimum requirements of the class specification. **Consideration shall be given to qualifications, performance record, seniority, conduct, and, where applicable, the results of competitive examinations."** But the decision maker(s) did not consider these items in violation of this Merit Rule.

52. Understandably, Plaintiff Pritchard does not have all of the information relating to all of these failures to promote. He is not aware of all of the employees who were promoted as a result. He is not aware of what scores the respective applicants received by the panelists who interviewed them. He is not aware of all of the recommendations made by the various panels assigned to his 12 promotion requests.

53. He was told, however, that there was at least one instance when he received from the panelists the highest score out of all of the applicants for promotion.

54. Pritchard is aware that in 2015 sometime after he filed his grievance and the

EEOC Charge, Brian Emig was promoted to a position to which Pritchard applied. Mr. Emig is not black and was not born in Liberia. He has not filed grievances and/or EEOC charges against Defendants. Mr. Emig's aforementioned Merit Rules required categories were not as good as Pritchard's were.

55. Similarly, Pritchard is aware that in 2017 Christopher Kearney was promoted to a position to which Pritchard applied. Mr. Kearney is not black and was not born in Liberia. He has not filed grievances and/or EEOC charges against Defendants. Mr. Kearney's aforementioned Merit Rules required categories were not as good as Pritchard's were.

56. The race, nationality, retaliation, demotion, failures to promote, referral for Fitness for Duty, and mandatory referral to counseling were brought to the attention of the EEOC prior to its issuing of the Right to Sue Letter.

## V. ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

57. At all times material hereto the individual Defendants were acting under color of law. The constitutional deprivations described herein are fairly attributable to the State.

58. At all times material hereto the individual Defendants participated in, authorized, ratified and sanctioned the constitutional deprivations described herein.

59. The actions of the governmental defendant, its agents and its employees, were deliberately, intentionally, willfully, purposefully and knowingly done in violation of federally protected rights and because of the exercise of those rights. The Defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal rights. Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them. Their actions were wanton and

malicious or taken with reckless indifference to federally protected rights. Pritchard's race, nationality, and/or filing of a grievance and/or filing an EEOC Charge of Discrimination made a difference in all actions adverse to him. They were a motivating or determinative factor in all actions adverse to him.

60. The Defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

61. The individual Defendants actions violated clearly established Constitutional rights and/or Civil Rigths statutes of which any official would have known.

62. The Defendants' actions were motivated by discriminatory/retaliatory bias, bad faith, and improper motive.

63. The Defendants' actions constitute an abuse of governmental power.

64. The Defendants' actions do not further any narrowly drawn important, substantial, or compelling governmental interest.

65. The Defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

66. Additionally, the conflicting evidence mitigates against the promotion decisions against Plaintiff Pritchard.

67. Factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached.

68. The motivating or determinative reason for any adverse employment action taken against Pritchard was discrimination on the basis of race (black), nationality (Liberian), and/or retaliation for filing a union grievance and/or an EEOC Charge of Discrimination. Any other

reasons given by the Defendants are a pretext for discrimination.

## VI. ALLEGATIONS REGARDING DOC'S POLICIES, CUSTOMS AND PRACTICES

69. By the policy, custom, and/or practice of officials functioning at a policy making level the DOC discriminated against the plaintiff because of his race, nationality, filing of a union grievance and/or filing an EEOC Charge of Discrimination.

70. The actions of the Defendants were taken pursuant to the DOC's policies, customs, and/or practices and/or were authorized, sanctioned, implemented, permitted, and ratified by officials functioning at a policy making level.

## VII. ALLEGATIONS REGARDING INJURY TO PLAINTIFF

71. As a direct and proximate result of the actions of the Defendants as detailed herein, Pritchard has suffered and is suffering lost wages, lost earnings, and lost benefits. He has been forced to use more than 700 hours of his accumulated 1,200 hours of sick time. He will suffer diminished earning capacity now and upon his retirement, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain and suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, and other non-pecuniary losses and injury. He owes $20,000.00 for extra schooling which he undertook in anticipation of obtaining a promotion, and rather than obtaining a promotion, he has been demoted.

## COUNT I - Title VII Race & Nationality Discrimination

72. Plaintiff repeats and realleges paragraphs 1- 71 set out above.

73. DOC, through its employees and/or agents illegally discriminated against Plaintiff in the terms and conditions of employment, suspended him, demoted him, and failed to promote

Plaintiff due to his race and/or nationality.

74. Plaintiff's statutory right to be free of racial and nationality discrimination in his employment under Title VII of the Civil Rights Act of 1964, as amended in 1991, has been denied.

75. As a result of Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, past, present and future benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

76. Any alleged legitimate non-discriminatory reason offered by Defendants for their actions is a pretext for intentional retaliatory discrimination.

77. Plaintiff can demonstrate pretext because any legitimate non-discriminatory reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

78. Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

79. Plaintiff's statutory right to be free of retaliatory discrimination has been denied under Title VII.

80. Defendants' actions were wilful and wanton and taken with a reckless disregard for Plaintiff's rights.

81. As a result of Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, past, present and future benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

**COUNT II - Title VII Race & Nationality Retaliation**

82. Plaintiff repeats and realleges paragraphs 1 - 81 set out above.

83. Plaintiff engaged in a protected activity under Title VII by filing an EEOC Charge of Discrimination on or about February 24, 2015 based upon his race and nationality with an updated listing of discriminatory and/or retaliatory items on December 5, 2016 and then prosecuting that charge at the EEOC thereafter as well as by complaining to Human Resources and to his supervisors that he was the subject of racially discriminatory actions.

84. There is a temporal nexus between the engagement in protected activity and the adverse employment actions taken against Plaintiff as a result of Plaintiff's protected activity.

85. Any alleged legitimate non-discriminatory reason offered by Defendants for their actions is a pretext for intentional retaliatory discrimination.

86. Plaintiff can demonstrate pretext because any legitimate non-discriminatory reasons offered by Defendants for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-

discriminatory reasons.

87. Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's engaging in protected activity.

88. Plaintiff's statutory right to be free of retaliatory discrimination has been denied under Title VII.

89. Defendants' actions were wilful and wanton and taken with a reckless disregard for Plaintiff's rights.

90. As a result of Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, past, present and future benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

**COUNT III - Year 1866 Civil Rights Act Section 1983/1981 Race & Nationality Discrimination**

91. Plaintiff repeats and realleges paragraphs 1 - 90 set out above.

92. The individual Defendants and the DOC illegally discriminated against Plaintiff in the terms and conditions of employment, suspended him, demoted him, and failed to promote Plaintiff due to his race and/or nationality.

93. Plaintiff's statutory right to be free of racial and nationality discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981, has been denied. Plaintiff's statutory right to be free from racial discrimination in his contractual relations under the Civil Rights Act of 1866, 42

U.S.C. § 1981, has been denied.

94. As a result of Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, past, present and future benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

**COUNT IV - Year 1866 Civil Rights Act Section 1983/1981 Race & Nationality Retaliation**

95. Plaintiff repeats and realleges paragraphs 1 - 94 set out above.

96. Plaintiff complained to his supervisors, the individual Defendants, and/or on February 24, 2015 and December 5, 2016 the EEOC and/or DDOL that he was illegally discriminated against in terms and conditions of employment, suspended, and otherwise harassed due to his race and/or nationality. He was pretextually discriminated against in the terms and conditions of employment, suspended, demoted and/or not promoted and otherwise harassed after making such complaints.

97. Plaintiff has been illegally retaliated against by the individual Defendants for opposing illegally racially discriminating actions.

98. Plaintiff's statutory right to be free from retaliatory actions has been denied under §1981. Plaintiff's statutory right to be free from retaliatory actions in her contractual relations has been denied under § 1981.

99. As a result of Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, past, present and future benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

**COUNT V - Equal Protection Clause**

100. Plaintiff repeats and realleges paragraphs 1 - 99 set out above.

101. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids unjustifiable discrimination on the basis of race and/or nationality.

102. Defendants discriminated unconstitutionally against Plaintiff based on his race and/or nationality by disciplining Plaintiff but did not discipline non-minority employees for the same offense.

103. Any non-discriminatory reasons cited by the Defendants are a pretext for race and/or nationality discrimination. The natural probative force of the evidence demonstrates race discrimination.

104. Alternatively, a reasonable fact finder could choose to disbelieve any non-discriminatory reasons offered by the defendants because the plaintiffs can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the Defendants' explanation that it is unworthy of belief.

105. Defendants' actions towards Plaintiff violate the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983.

**COUNT VI - Equal Protection Clause Retaliation**

106. Plaintiff realleges and hereby incorporates paragraphs 1 - 105 set out above.

107. Defendants took action adverse to Plaintiff as a direct and proximate result of and in retaliation for Plaintiff's complaints of racial discrimination to Defendants and separately to the EEOC and/or DDOL on February 24, 2015 with a new list of discriminatory items on December 5, 2016. There is a temporal and causal relationship between Plaintiff's aforementioned protected

speech and conduct, and adverse employment action. Plaintiff's complaints of racial discrimination in violation of the Equal Protection Clause of the 14th Amendment was a substantial or motivating factor in the adverse employment action. The Defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have grounds to terminate Plaintiff.

108. Plaintiff's constitutional right to freedom of speech has been denied under the 14th Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT VII - Terms and Conditions, § 1983**

109. Plaintiff realleges and hereby incorporates paragraphs 1 - 108 set out above.

110. Under all the circumstances, Plaintiff has been illegally discriminated against in terms and conditions of employment which was created, approved and tolerated by management because of her race.

111. Plaintiff's constitutional right to be free of racial and/or national origin discrimination has been denied under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**COUNT VIII - First Amendment Petitions Clause Retaliation**

112. Plaintiff repeats and realleges paragraphs 1 - 111 set out above.

113. The Defendants took action adverse to Plaintiff as a direct and proximate result of and in retaliation for Plaintiff's petitioning of the government by filing a union grievance and/or by filing and EEOC Charge of Discrimination.

114. There is a temporal and causal relationship between Plaintiff's aforementioned protected speech and conduct, and the adverse action taken against Plaintiff.

115. First Amendment protected activity was a substantial or motivating factor in the adverse employment actions against Plaintiff.

116. The Defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have taken adverse action against Plaintiff.

117. As a direct and proximate result of the actions of the Defendants as detailed herein, Plaintiff has suffered and is suffering diminished earning capacity now and in the future, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain, suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, and other non-pecuniary losses and injury.

118. Plaintiff's constitutional right to petition the government has been denied under the First Amendment of U.S. Constitution and 42 U.S.C. § 1983.

**WHEREFORE,** plaintiff prays that the Court:

(a) Enter judgment against the Defendants, jointly and severally.

(b) Enter a declaratory judgement declaring the acts of the Defendants to be a violation of Plaintiff's Constitutional and statutory rights.

(c) Enter a judgment against the Defendants for nominal or presumed damages.

(d) Under Title VII, enter a judgment against the Defendant DOC for compensatory damages, including lost wages, back pay, overtime and benefits, future or front pay, loss of earning capacity, humiliation, embarrassment and injury to reputation, personal injuries, and any other pecuniary and/or non-pecuniary damages.

(e) Issue a mandatory injunction requiring Defendant DOC to promote Plaintiff to the

position of Captain.

(f) Issue a permanent injunction enjoining the Defendants from in the future discriminating against black and/or Liberian employees in discipline and promotions, and requiring appropriate reporting to the court or a federal monitor of steps taken to eliminate past or future discrimination.

(g) Issue a permanent injunction requiring the Defendants to:

(i) Notify everyone who learned of Defendants' treatment of Plaintiff that their conduct was illegal;

(ii) Expunge Plaintiff's personnel file of any derogatory information relating to this matter.

(h) Enter a judgment against the individual Defendants for compensatory and punitive damages.

(i) Award plaintiff costs, pre-and-post judgment interest, and attorneys' fees for this suit.

(j) Require such other further relief as the Court deems just and proper under the circumstances.

**MARTIN D. HAVERLY, ATTORNEY AT LAW**

/s/ Martin D. Haverly

**MARTIN D. HAVERLY, ESQUIRE**
Del. Bar No. 3295
2500 Grubb Road, Suite 240-B
Brandywood Plaza
Wilmington, DE 19810
(302) 529-0121

Attorney for Plaintiff Thomas Pritchard

Dated: December 29, 2017