IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS PRITCHARD,<br><br>        Plaintiff,<br><br>        v.<br><br>STATE OF DELAWARE DEPARTMENT<br>OF CORRECTIONS, CAROL EVANS,<br>WAYNE WILSON, ALAN GRINDSTEAD,<br>ROBERT COUPE, and PERRY PHELPS,<br><br>        Defendants | C.A. No. 18-0008 (MN) |

**MEMORANDUM OPINION**

Thomas Pritchard – Pro Se Plaintiff

Allison J. McCowan, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – Attorney for Defendants.

October 23, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Plaintiff Thomas Pritchard ("Plaintiff" or "Pritchard") proceeds *pro se*. (D.I. 1; D.I. 29).[1] He commenced this action by filing the Complaint on January 2, 2018. (D.I. 1). Presently before the Court is the motion of Defendants State of Delaware Department of Corrections ("DDOC"), Carol Evans, Wayne Wilson, Alan Grindstead, Robert Coupe, and Perry Phelps (collectively "Defendants") for summary judgment. (D.I. 50). Briefing is complete.[2] For the reasons stated below, the Court will GRANT the motion.

**I.    BACKGROUND**

As alleged in the Complaint, on March 28, 2016, Plaintiff, then holding the rank of Correctional Lieutenant, was notified by his superiors that he would be demoted to Correctional Sergeant as the result of a workplace incident that occurred on February 11, 2016. Plaintiff was demoted effective August 21, 2016. On October 3, 2016, after Plaintiff returned to work following his demotion, he engaged in an argument with several co-workers that resulted in him being sent home and ordered to undergo a fitness-for-duty examination (and later counseling). Plaintiff alleges that his demotion, the aforementioned examination and counseling referral, and the fact that he was not promoted despite applying for numerous positions are either due to discrimination based on his race and national origin, or in retaliation for alleging to DDOC human resources and the Equal Employment Opportunity Commission ("the EEOC") that he had been discriminated against.

---

[1]    Prior to notifying the Court by way of letter dated October 22, 2019 of his intent to proceed *pro se*, Plaintiff was represented by counsel. (D.I. 29).

[2]    Plaintiff did not formally respond to Defendants' motion for summary judgment. Instead, he sent a letter to the Court which included his annotated selection of record materials he wished the Court to consider. (*See* D.I. 54). In the interest of justice and recognizing Plaintiff's *pro se* status, this Court considers this evidence as Plaintiff's response.

1

Defendants move for summary judgment on the multiple grounds. First, Defendants argue that Plaintiff has not produced the evidence required to sustain a *prima facie* case of discrimination or retaliation.[3] Alternatively, Defendants argue that DDOC had a legitimate and nondiscriminatory reason for each of the adverse actions Plaintiff alleged. (D.I. 51).

## II. FACTS PRESENTED BY THE PARTIES

At all times relevant to this case, Plaintiff, was employed by DDOC in some capacity as a correctional officer. Born in Liberia in 1965, Plaintiff, who identifies as Black, emigrated to the United States and, starting in October 1984, served honorably and admirably in the United States military for approximately twenty years, during which time he received multiple medals and commendations. (D.I. 1 ¶ 7; D.I. 54–5 at 20-21). Plaintiff became a naturalized citizen of the United States in 1995. (D.I. 54–5 at 20). After retirement from active duty in October 2004, Plaintiff was hired as a corrections officer for DDOC in 2005. (D.I. 52 at A110). Over the next several years, he was promoted to Corporal in 2006, to Sergeant in 2008, and to Lieutenant in 2011. (*Id.*)

By all accounts, Plaintiff served as a Lieutenant without incident through at least February 2015. (*See generally* D.I. 1 ¶ 17). The parties agree that on February 1, 2015, an offender under Plaintiff's supervision reported that a second offender had touched the first offender's buttocks ("the PREA[4] Incident") (*See, e.g.*, D.I. 1 ¶ 19; D.I. 12 ¶ 19; D.I. 54–2 at 10). Although Plaintiff took steps to address the incident (*see*, *e.g.* D.I. 54–2 at 9), DDOC undertook an investigation, the

---

[3] In their brief, Defendants argue that Plaintiff has failed to "prove" a *prima facie* case for each of his claims. (*See generally* D.I. 51). As discussed *infra*, Plaintiff need not prove his case at the summary judgment stage – instead, he need only produce evidence demonstrating a genuine issue for trial.

[4] The Court uses "PREA" to refer to the Prison Rape Elimination Act.

2

result of which determined that Plaintiff did not handle the incident in accordance with DDOC policy and the PREA. (*See, e.g.*, D.I. 54–2 at 5; D.I. 52 at A55-A58). Plaintiff was suspended ten days with pay. (D.I. 54–2 at 5). During the grievance process prior to his suspension, Plaintiff accepted full responsibility for his actions and acknowledged understanding the purpose of the PREA. (D.I. 52 at A60-A61).

On February 11, 2016, due to confusion over two inmates sharing the same first initial and last name, an officer under Plaintiff's supervision allowed an inmate designated for reassignment to a higher-security unit to go out into the community for work-release. (D.I. 1 ¶ 31; D.I. 52 at A62-A69). Without informing his superiors of the mixup, Plaintiff consulted with two officers with rank and training inferior to Plaintiff's and sent those two officers, unarmed, into the community to retrieve the inmate; this was accomplished without incident. (D.I. 1 ¶ 33; D.I. 52 at A71-A79). Sending the two officers into the community caused the correctional institute to drop below the minimum required number of officers on premises. (D.I. 1 ¶ 34; D.I. 52 at A77-A82). When, later that day, DDOC became aware of the situation and Plaintiff's actions, Plaintiff was immediately removed from the workplace with pay pending an investigation. (D.I. 1 ¶ 35; D.I. 52 at A70-A73).

Pursuant to the investigation, during which Plaintiff admitted that he was unaware of some of his duties as shift commander, on March 28, 2016, DDOC made the decision to demote Plaintiff from Correctional Lieutenant to Correctional Sergeant. (D.I. 52 at A77-A79; D.I. 1 ¶ 40; D.I. 54–2 at 41-43). Plaintiff filed an internal complaint with DDOC human resources on the same day, alleging that his treatment and punishment with regard to this incident was discriminatory. (*See* D.I. 54–4 at 3). Plaintiff's demotion became effective on August 21, 2016. (D.I. 54–2 at 44). The

3

parties agree that Plaintiff filed a charge of discrimination with the EEOC on September 28, 2016. (*See* D.I. 52 at A123).

On October 3, 2016, Plaintiff was involved in a verbal altercation in the presence of several coworkers, wherein he voiced that he was being "targeted" and harassed. (*See* D.I. 52 at A84-A97). Plaintiff was sent home, kept out of work for several days, and later ordered to undergo a fitness-for-duty examination. (D.I. 1 ¶¶ 43-44; D.I. 52 at A99). Plaintiff underwent his fitness-for-duty evaluation, wherein it was determined that he could return to work (which he did in November 2016), but that he should undergo outpatient therapy to improve his coping skills and stress management. (D.I. 1 ¶ 46; D.I. 52 at A100-A107). From May 2015 through the time the Complaint was filed, Plaintiff applied for promotion eight times, and was rejected each time. (D.I. 1 ¶ 50; D.I. 12 ¶ 50).

### III.    LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080–81 (3d Cir. 1996). An assertion that a fact is or is not genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B).

If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), but must only ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented," *Anderson*, 477 U.S. at 248.

In an employment discrimination case, like this one, the Court must ascertain "whether . . . there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987); *see also Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 676 (E.D. Pa. Sep. 27, 2016). "Conclusory allegations," however, "in the absence of particulars, are insufficient to defeat summary judgment." *Taylor v. Cherry Hill Bd. of Educ.*, 85 Fed. App'x 836, 839 (3d Cir. 2004). Moreover, where, as here, "the nonmoving party bears the burden of proof at trial, the moving party is entitled to summary judgment on showing that there is a lack of evidence to carry the non-moving party's burden on an essential element of that party's cause of action." [5] *Brooks v. CBS*

---

[5] The law provides that a *pro se* complaint must be read liberally, and the applicable law is applied "irrespective of whether a pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999). All plaintiffs, however, including those plaintiffs choosing to proceed *pro se*, are subject to the Federal Rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Thompson v. Target Stores*, 501 F.Supp.2d 601, 603-04 (D. Del. 2007) ("The Third Circuit has consistently abided by the Supreme Court's

*Radio, Inc.*, 342 Fed. App'x 771, 775 (3d Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Plaintiff did not file a formal response addressing the arguments raised by Defendants' brief in support of their motion for summary judgment. *See supra* note 2. A party's failure to respond to a motion for summary judgment, however, "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). The Court must still "find that the undisputed facts warranted judgment as a matter of law." *Miller v. Ashcroft*, 76 Fed. App'x 457, 462 (3d Cir. 2003) (citing FED. R. CIV. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the Court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, No. 12-2122, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Servs., Inc.*, No. 08-3975, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)) (internal quotation marks omitted).

## IV. DISCUSSION

### A. Title VII Claims Arising from the PREA Incident

In Counts I and II, Plaintiff alleges violations of Title VII based on discrimination and retaliation, respectively. Defendants assert that such claims, to the extent they are based on the PREA Incident, are time-barred. (*See* D.I. 51 at 4). In support of their argument, Defendants note that a claimant who wishes to bring a claim under Title VII in Delaware has 300 days from the alleged discriminatory act to file a complaint with the EEOC. *Riley v. Delaware River & Bay Auth.*, 457 F. Supp. 2d 505, 510 (D. Del. 2006). Defendant also notes that Plaintiff would now be time-barred from filing an *EEOC complaint* alleging that DDOC's conduct in the wake of the

---

guidance on this matter, dismissing *pro se* complaints when the plaintiff has failed to abide by the Federal Rules.")

PREA Incident was discriminatory or retaliatory, and in fact was time-barred from doing so when he filed his EEOC complaint on September 28, 2016. (*See* D.I. 51 at 4) (italics added).

Although not explicitly stated, the Court understands Defendants' argument to be that Plaintiff failed to exhaust his administrative remedies with regard to Title VII claims stemming from the PREA Incident. Defendants point out that Plaintiff did not raise his suspension after the PREA Incident in his EEOC complaint, and Defendants raised in their Answer the affirmative defense of failure to exhaust. (*See* D.I. 12 at 9 ¶ 11; D.I. 52 at A123; D.I. 51 at 4). As to exhaustion, this Court agrees that Defendants are entitled to summary judgment on any Title VII claim related to DDOC's conduct in the wake of the PREA Incident.

Title VII claims are subject to the requirement of exhaustion. *See Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) ("It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief.") (citing *McKart v. United States*, 395 U.S. 185, 193 (1969). "As a precondition to the commencement of a Title VII action in [district] court, a complainant must first file a charge" with the EEOC. *Ford Bend Cty., Texas v. Davis*, 139 S.Ct. 1843, 1846 (2019). In determining whether Plaintiff has exhausted his administrative remedies, this Court must determine whether the claims alleged in the instant suit are "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.2d 1291, 1295 (3d Cir. 1996). In the Third Circuit, the scope of an EEOC complaint is limited to that "which can reasonably be expected to grow out of the charge of discrimination." *See Barzanty v. Verizon PA, Inc.*, 361 Fed. App'x 411, 414 (3d Cir. 2010).

Plaintiff's EEOC Complaint makes no mention of any discrimination or retaliation prior to February of 2016. (*See* D.I. 52 at A123). No investigation into Plaintiff's charge of discrimination

7

in the EEOC Complaint could reasonably be expected to include examining an unmentioned, unrelated incident occurring one year before the conduct referenced. (*See id.*). Accordingly, this Court finds that Plaintiff has failed to exhaust his administrative remedies with regard to Title VII claims that DDOC's disciplinary response to the PREA Incident was discriminatory or retaliatory. Thus, to the extent that Counts I and II are based on the PREA Incident, the Court will grant summary judgment based on Plaintiff's failure to exhaust and inability to timely do so now.

### B. <u>Plaintiff's Discrimination and Retaliation Claims</u>

Plaintiff's discrimination and retaliation claims raised under Title VII (Counts I and II), §§ 1981 and 1983 (Counts III, IV and VII), as well as his claims under the Equal Protection Clause (Counts V and VI)[7] are all subject to analysis under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).[8] *See, e.g.*, *Sullivan v. Hanover Foods Corp.*, No. 18-803 (MN), 2020 WL 211216, at *15 (D. Del. Jan. 14, 2020) (analyzing Title VII claim under *McDonnell Douglas*); *Shockley v. Minner*, 726 F. Supp. 368, 378 (D. Del. 2010) (§ 1983 & Equal Protection); *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (§ 1981).

---

[7]  Plaintiff alleges violations of §§ 1983 and 1981 (Counts III, IV, and VII) separate from his allegations of violations of the Fourteenth Amendment under the Equal Protection Clause (Counts V and VI). (*See* D.I. 1 ¶¶ 92-94, 101-105). Section 1983, however, "does not create substantive rights, but provides a remedy for the violation of rights created by federal law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). As such, the Court interprets Counts III, IV and VII as seeking a remedy for violation of his Fourteenth Amendment rights. *See Harris v. Poska*, 728 Fed. App'x 149, 154 (3d Cir. 2018) (analyzing Equal Protection claim brought under § 1983).

[8]  Defendants treat Plaintiff's claims as though they sound in pretext and have briefed those claims accordingly. (*See* D.I. 51). Plaintiff has not responded to or refuted Defendants' argument or interpretation of his claims, and this Court finds that applying the pretext to Plaintiff's claims is appropriate based on their structure.

Under *McDonnell Douglas*'s three-step burden-shifting framework, Plaintiff must first make out a *prima facie* case, *i.e.* establish a legally-required rebuttable presumption,[9] of discrimination or retaliation. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193-94 (3d Cir. 2015). If successful, the burden of production shifts to Defendants to articulate a "legitimate, non-retaliatory reason for having taken the adverse action." *Id.* If Defendants successfully complete this second step, Plaintiff then must present evidence indicating that Defendants' reason(s) are mere pretext for a discriminatory motive. *Id.* Although the burden of production shifts back and forth, Plaintiff "has the ultimate burden of persuasion at all times." *Id.*

        1.      Plaintiff's Discrimination Claims

The first step of the *McDonnell Douglas* framework requires Plaintiff to demonstrate a *prima facie* case of discrimination. Although some differences exist between the respective *prima facie* cases for discrimination under Title VII, § 1981, and § 1983, the standards are similar. In order to prevail on his claims Plaintiff must show that: (1) he is a member of a protected class or classes; (2) he was qualified for the position he held or sought; (3) he suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected classes were treated more favorably. *See*, *e.g.*, *Friday-Dillard v. Christiana Care Health Sys., Inc.*, No. 19-cv-2338-LPS, 2020 WL 5821276, at *2 (D. Del. Sept. 30, 2020) (Title VII and § 1981); *Shockley*, 726 F. Supp. at 378 (§ 1983).

The parties do not dispute that Plaintiff is a member of a protected class on two bases: race (Black) and national origin (Liberian). (D.I. 51 at 5). Likewise, the parties do not dispute that Plaintiff was qualified and suffered at least some adverse employment action when he was

---

[9]     *See*    https://www.law.cornell.edu/wex/prima_facie#:~:text=A%20prima%20facie%20 case%20is,rebutted%20by%20the%20other%20party (last visited October 23, 2020).

suspended, demoted, and subsequently not promoted.[10] (*Id.*) Plaintiff claims that similarly situated persons who are not members of the protected classes were treated more favorably. (*See* D.I. 54–1 at 9). Plaintiff's allegations of disparate treatment are acknowledged by Defendants, who argue that his claims are unsubstantiated by evidence and fail to create a triable issue of fact. (D.I. 51 at 6). This Court does not resolve Defendants contention but assumes, for the sake of argument, that Plaintiff has made a *prima facie* showing of each necessary element of his discrimination claims.

Accordingly, this Court proceeds to the second part of the *McDonnell Douglas* framework: determining whether Defendants articulated legitimate, nondiscriminatory reasons for the adverse actions in question. Here, Defendants have produced significant and undisputed record evidence demonstrating legitimate and nondiscriminatory reasoning behind these adverse actions. Plaintiff was suspended and demoted after the February 11, 2016 incident where the wrong inmate was released (and subsequently retrieved). (*See* D.I. 1 ¶ 40; D.I. 54–1 at 10). Even assuming that Plaintiff could show that others making a similar mistake were not demoted or suspended (a showing that has not been made), Defendants have provided ample evidence that the adverse actions were legitimate and nondiscriminatory in nature. Plaintiff's decision to send unarmed guards to retrieve the prisoner is an apparent violation of various DDOC policies and constituted a failure to perform Plaintiff's duties properly. (*See* D.I. 52 at A77). Additionally, documents

---

[10]   Defendants agree that failure to promote, suspension, and demotion are adverse employment actions. Defendants dispute, however, that requiring Plaintiff to undergo counseling and a fitness-for-duty examination are adverse employment actions. (*Id.*). This Court agrees that ordering an employee to undergo counseling and a fitness-for-duty examination are not adverse employment actions and does not treat them as such for the purposes of the instant suit. *See, e.g.*, *Caver v. City of Trenton*, 420 F.3d 243, 256 (3d Cir. 2005) (holding that ordering an employee to undergo psychiatric counseling and a return-to-work evaluation do not constitute adverse actions).

show that Plaintiff admitted at the time of his Pre-Decision Meeting that he was not aware of his duties and responsibilities with regard to the incident – this alone supports a finding that his suspension and demotion were legitimate. (*See id.*). Furthermore, approximately one year prior to the February 11, 2016 incident, Plaintiff made a similar decision to act contrary to department policy, resulting in a paper suspension and official discipline.[11] (*See id.* at A59).

Defendants have also articulated sufficient legitimate and nondiscriminatory reasons why Plaintiff was not promoted during the time in question. Plaintiff asserts that throughout his employment with DDOC, he either "met or exceeded expectations" on each performance review he received. (D.I. 1 ¶ 17). Defendants admit, and documents apparently confirm, that Plaintiff's performance reviews found that he met expectations. No evidence was offered, however, demonstrating that Plaintiff ever received a performance evaluation where it was determined he "exceeded expectations." (*See* D.I. 54–2 at 62; D.I. 52 at A73; D.I. 2 ¶ 17).

Importantly, in the time Plaintiff served as a Correctional Lieutenant, the parties do not dispute that two incidents occurred where Plaintiff acted contrary to DDOC policy. Although Plaintiff disagrees with the DDOC's levying of discipline, he does not deny that the incidents in February 2015 and February 2016 occurred. (*See* D.I. ¶¶ 19, 31-36). Defendants have produced evidence demonstrating that Plaintiff was aware of the safety concerns – for inmates, officers, and the public – that the violated policies were designed to abate. (*See* D.I. 52 at A47-A51, A80-82). This Court finds that, *inter alia*, the above evidence fulfills Defendants' burden of demonstrating a legitimate, nondiscriminatory reason for taking the adverse actions in question.

---

[11]   Although Plaintiff's Title VII claims related to the adverse actions occurring pursuant to the PREA Incident are barred, the fact that Plaintiff was formally disciplined pursuant to that incident is relevant to Defendants' justification for the adverse actions occurring thereafter.

11

Proceeding to the third step of the *McDonnell Douglas* framework, this Court now looks to the record to see if Plaintiff has produced any evidence that would allow a reasonable jury to conclude that Defendants' proffered justifications are mere pretext. It is here that Plaintiff's discrimination claims fail.

Aside from conclusory statements and allegations in Plaintiff's Complaint, the record is bereft of any evidence that Defendants' justification for the adverse actions in question is pretext. Conclusory allegations are insufficient to sustain the Plaintiff's burden of production at the summary judgment stage. *See Taylor*, 85 Fed. App'x at 839. In fact, at his deposition, Plaintiff testified that nobody from DDOC made any comment indicating that his treatment was due to his nationality or race. (D.I. 52 at A118). Accordingly, as Plaintiff has not produced any evidence creating a triable factual issue on his discrimination claims, Defendants are entitled to summary judgment under Rule 56(a) on Plaintiff's discrimination claims.

2. Plaintiff's Title VII, § 1981, and Equal Protection Retaliation Claims

Plaintiff's retaliation claims under Title VII, § 1981, and the Equal Protection Clause[12] are likewise analyzed under the *McDonnell Douglas* framework. *See, e.g.*, *Hanover*, 2020 WL 211216, at *6 (Title VII); *Castleberry,* 863 F.3d 259, 263 (§ 1981).

Like Plaintiff's discrimination claims, his retaliation claims each have a similar requirements for a *prima facie* case: "(1) [P]laintiff engaged in a protected activity; (2) the employer took a materially adverse action against him; and (3) there was a causal connection

---

[12] The Third Circuit has held that a "pure or generic retaliation claim simply does not implicate the Equal Protection Clause." *Oras v. City of Jersey City*, 378 Fed. App'x 772, 775 (3d Cir. 2009). Defendant has not raised this argument with regard to Plaintiff's Equal Protection Clause retaliation claim, however, so this Court proceeds with its analysis.

between the protected activity and the employer's action." *LeBoon v. Lancaster Jewish Community Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007).

Here, Plaintiff unquestionably engaged in a protected activity when he filed an EEOC Charge of Discrimination against DDOC on September 28, 2016. (D.I. 52 at A123).[13] Evidence suggests that Plaintiff also filed an internal complaint alleging discrimination on March 28, 2016. (*See* D.I. 54–4 at 3). As discussed *supra*, it is not disputed that Plaintiff suffered at least some adverse employment action when he was demoted and subsequently not promoted. (D.I. 51 at 5). This Court assumes, again for the sake of argument, that the timeline supports a potential causal connection between the Plaintiff's protected activities and the adverse actions in question.

Even if Plaintiff has demonstrated a potential causal connection between his protected activities and the adverse actions he suffered, as previously discussed, Defendants have produced significant and undisputed record evidence demonstrating legitimate and nondiscriminatory reasons for those actions. *See supra*. As with Plaintiff's discrimination claims, Plaintiff has not been able to produce any evidence that would allow a reasonable jury to conclude that Defendants' actions were merely pretext. Plaintiff only makes conclusionary statements that he was retaliated against by DDOC; as discussed *supra*, these conclusory statements are not sufficient for his claims to survive summary judgment.

The Court recognizes Plaintiff's averment that he was told by therapist Nancy Ball that DDOC "ultimately was going to fire him" and were trying to force him to quit. (D.I. 1 ¶ 47). Even if the Court could consider this hearsay evidence,[14] this alleged statement is not evidence of pretext

---

[13] Plaintiff also alleges, but the record does not support, that he filed a previous charge in February of 2015. (*See* D.I. 1 ¶ 83).

[14] Plaintiff's recounting of Ball's alleged statement is inadmissible hearsay, and cannot affect this Court's summary judgment calculus. "Hearsay statements that would be inadmissible

13

– Plaintiff does not allege that Ball claimed DDOC was going to fire Plaintiff or force him to quit *because he complained of discrimination*.

Based on the evidence that has been produced, no reasonable jury could conclude that Defendants' proffered reasoning for the adverse actions taken is mere pretext to cover a retaliatory motive. Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claims under Title VII, § 1981, and the Equal Protection Clause.

### C. Plaintiff's First Amendment Retaliation Claim

The distinction between analysis of a First Amendment retaliation claim and those discussed *supra* is significant enough to warrant separate discussion. To establish a First Amendment retaliation claim, a public employee must show that his speech is protected by the First Amendment and that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action. *See Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009). If the employee establishes both of those predicates, the burden shifts to the employer to show that it would have taken the same action even if the speech had not occurred. *Id.*

A public employee's statement is protected by the First Amendment when, "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public" as a result of his statement. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir 2006) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Hill*, 455 F.3d at 242 (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)). This

---

at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

14

Court finds that, as a matter of law, Plaintiff's speech – his charges and allegations of discrimination – does not address a matter of public concern and Defendants are therefore entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

The United States Supreme Court has been clear: when a public employee speaks "as an employee upon matters only of personal interest . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983). It is apparent from the content, form, and context of Plaintiff's speech, as evinced by both the Complaint and the evidentiary record, that his speech spoke to "matters only of personal interest." *Id.* Plaintiff's speech consisted of private charges and complaints, wherein he charged only that *he* was discriminated against. As this speech did not implicate a matter of *public* concern, Plaintiff's First Amendment retaliation claim fails.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (D.I. 50) is GRANTED. An appropriate order will follow.

15